UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:17-CV-80286-ROSENBERG

MID-CONTINENT CASUALTY COMPANY,

    Plaintiff,

v.

JWN CONSTRUCTION, INC., an inactive Florida
corporation; UNDERWRITERS AT LLOYD'S,
LONDON a/s/o DR. MICHAEL FLAX, a foreign
corporation, and MICHAEL D. FLAX, an individual,

    Defendants.
_____/

## ORDER GRANTING PLAINTIFF'S MOTION FOR FINAL SUMMARY JUDGMENT

This matter is before the Court on Plaintiff's Motion for Final Summary Judgment [DE 92]. The Motion has been fully briefed. For the reasons set forth below, the Motion is granted and final summary judgment is entered in Plaintiff's favor.

### I. BACKGROUND

In January of 2008, Defendant Michael Flax wanted to construct a residential home (the "Property"). Flax wanted to use an entity that is not a party to this case, Mager Construction ("Mager"), to build his home. Mager was not an approved builder for the lender that Flax wanted to use to finance the construction. Defendant JWN, however, was an approved builder. Flax therefore entered into an agreement with JWN wherein JWN would act as the general contractor for the construction of his home, and JWN entered into a separate agreement with Mager for Mager to undertake the actual construction project.

After construction was complete, in 2011, Flax discovered water intrusion and other damage at his Property. Flax filed suit in Florida state court and one of the defendants in that suit is JWN. JWN had a general commercial liability insurance policy with Plaintiff. Plaintiff filed the instant suit to determine whether it owes a duty to indemnify and defend JWN.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The existence of a factual dispute is not by itself sufficient grounds to defeat a motion for summary judgment; rather, "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A dispute is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson*, 477 U.S. at 247-48). A fact is material if "it would affect the outcome of the suit under the governing law." *Id.* (citing *Anderson*, 477 U.S. at 247-48).

In deciding a summary judgment motion, the Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). The Court does not weigh conflicting evidence. *See Skop v. Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007). Thus, upon discovering a genuine dispute of material fact, the Court must deny summary judgment. *See id.*

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once the moving party satisfies this burden, "the nonmoving party 'must do more than simply show that there is

some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "[t]he non-moving party must make a sufficient showing on each essential element of the case for which he has the burden of proof." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, to show that a reasonable jury could find in favor of that party. *See Shiver*, 549 F.3d at 1343.

### III. THE PARTIES' STATEMENTS OF MATERIAL FACTS

Before the Court addresses the legal arguments in Plaintiff's Motion for Summary Judgment, the Court first addresses the parties' statements of material facts submitted in connection with the Motion for Summary Judgment. On March 31, 2017, the Court entered a detailed order that contained requirements for citations to the record on summary judgment. *See* DE 6. Plaintiff complied with the Court's requirements. Defendants did not. For example, in the Court's order, the Court required a respondent to *clearly specify* whether a fact was disputed and, if so, to set forth the evidentiary basis for the dispute. The Court provided a visual example:

> **MOVANT'S STATEMENT OF MATERIAL FACTS**
>
> 1. Blackacre is owned by Movant. Exhibit B, ¶ 2.
>
> 2. Blackacre is currently under contract for sale. Exhibit C, pgs. 2-4.
>
> A respondent's statement of material facts must clearly respond to each of the foregoing:
>
> **RESPONDENT'S STATEMENT OF DISPUTED FACTS
> IN OPPOSITION TO MOVANT'S STATEMENT OF MATERIAL
> FACTS AND STATEMENT OF ADDITIONAL MATERIAL FACTS
> IN OPPOSITION TO MOVANT'S MOTION FOR SUMMARY JUDGMENT**
>
> Paragraph 1: Undisputed
>
> Paragraph 2: Disputed. The contract for sale was never executed. Exhibit A, ¶ 5.

DE 6 at 10. The Court also ordered that *after* a respondent had clearly conceded or contested each of the movant's statements of material fact, the respondent could *then* provide additional facts. *Id.* Defendants' response (on many key issues) to Plaintiff's statement of material facts does not clearly specify whether Plaintiff's facts are contested. Two examples of Defendants' lack of clarity are below. Plaintiff contends the following in its statement of material facts:

> JWN entered into a contract with Flax to construct the project.
>
> The contract identifies JWN as [sic] contractor responsible for all work required to construct the Property.

DE 93 at 6 (citations omitted).

In response, Defendants do not specify whether the facts quoted above are contested or conceded. Instead of putting the Court on notice of whether Plaintiff's facts are contested, Defendants set forth a series of additional facts, which contravene the Court's order of

4

requirements.  Because Defendants have failed to inform the Court as to whether Plaintiff's facts are contested, the Court has attempted to parse the text of Defendants' response to attempt to guess whether Defendants concede or refute Plaintiff's facts, however, none of Defendants' additional facts are germane to the Court's inquiry:

> MAGER met with FLAX numerous times to discuss MAGER building the residence before JWN was ever involved. MAGER and FLAX were in agreement as to the type of construction necessary for the home prior to JWN's involvement. FLAX decided to change his lender to Seacoast Bank. MAGER was not a qualified contractor for Seacoast Bank, but suggested JWN, who was qualified with Seacoast Bank, to be hired to pull the permit. JWN is an approved builder for Seacoast Bank. MAGER approached JWN and offered JWN $10,000.00 to enter into a written contract with FLAX and pull the permit so that the financing could go through Seacoast. JWN was not to have any other responsibilities in the project including performing the construction work or supervising performance of the construction work.

DE 100 at 3 (citations omitted).  Defendants' response does not clearly concede or contest Plaintiff's statements of material fact quoted above.  Instead, Defendants offer additional facts.  Defendants were required to offer additional facts *after* Defendants had conceded or contested Plaintiff's own statements of material fact.  Defendants' lack of clarity extends to multiple, critical, statements of fact submitted by Plaintiff.  For example, Plaintiff sets forth the following critical supported fact:

> James Newman, qualifying agent for JWN, signed the permit for the Project.

DE 93 at 7. (citation omitted).  In response, Defendants again do not clearly concede or contest this fact, and instead respond as follows:

> NEWMAN is a general contractor and is the principal owner of JWN.

DE 100 at 3 (citation omitted).  This fact is not germane to the Court's inquiry as to whether JWN signed a permit.  Because Defendants do not clearly inform the Court of the evidentiary basis upon

5

which many of Plaintiff's statements of fact are contested, the Court must guess as to whether Defendants' additional facts were meant to contest one of Plaintiff's facts or whether Defendants' facts were meant to simply bolster Defendants' case on other grounds. This lack of clarity is precisely the reason the Court entered its detailed order of requirements.

Because the Court cannot discern the evidentiary basis upon which Defendants challenge many of Plaintiff's statements of material fact, because Defendants' response to Plaintiff's statement of material facts does not clearly delineate additional facts from facts in opposition to Plaintiff's statement, and because Defendants have failed to comply with the Court's order of requirements, the Court deems several of Plaintiff's statements of material fact admitted. *See* Local Rule 56.1(b) ("All material facts set forth in the movant's statement filed and supported as required above **will be** deemed admitted unless controverted by the opposing party's statement.") (emphasis added). The Court will note the specific facts it deems admitted in its analysis, *infra*.

## IV. ANALYSIS

Plaintiff contends that it is not obligated to indemnify[1] or defend JWN because, pursuant to the contracts for insurance in this case, JWN's insurance policies do not provide coverage for the following reasons: (i) the insurance policies contained a "your work" exclusion provision and (ii) the "your work" exclusion provision applies to the facts of this case. More specifically, the insurance policies in this case do not apply to: "'Property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'" DE 93 at 4. The term 'your work' is a defined term in the policies, and is defined in part as "work or operations performed by you or on your behalf." *Id.* at 3. The term "property damage" is also a defined term,

---

1 "Under Florida law, an insurer's duty to indemnify is determined by analyzing the policy coverages in light of the actual facts of the underlying case." *Underwriters at Lloyds London v. STD Enters., Inc.*, 395 F. Supp. 2d 1142, 1147 (M.D. Fla. 2005).

and is defined in part as "physical injury to tangible property." *Id.* Finally, products-completed operations hazard is a defined term: "[A]ll 'bodily injury' and 'property damage' occurred away from premises you own or rent arising out of 'your product' or 'your work.'" *Id.* at 2. Thus, it is Plaintiff's position that the work in this case was performed by JWN or on JWN's behalf, the "your work" exclusion therefore applies, and Plaintiff is not required to indemnify or defend JWN.

Plaintiff's position and interpretation of its policies is fully consistent with Florida law.[2] Florida Statutes define the term "contractor," in part, as "the person who is qualified for, and is only responsible for, the project contracted for and . . . the person who, for compensation, undertakes to, submits a bid to, or does himself or herself or by others construct, repair, alter remodel, add to, demolish, subtract from, or improve any building or structure." Fla. Stat. § 489.105. Florida's statutory scheme reflects the legislative intent that qualifying agents supervise the project entered into under their name and by use of their contractor's license. *Alles v. Dep't of Prof'l Reg.*, 423 So. 2d 624, 626 (Fla. Dist. Ct. App. 1982). The only way a company may be a contractor, under Florida's statutory framework, is by obtaining an individual licensed as a contractor as its "qualifying agent." *See* Fla. Stat. § 489.119. "The obvious purpose of these statutes allowing a company to act as a contractor through a licensed contractor is to insure that projects undertaken by a company are to be supervised by one certified and licensed by the board." *Alles*, 423 So. 2d at 626. Once an agent designates himself or herself as the general contractor, the agent may not avoid responsibility by arguing he or she had nothing to do with the project. *See Hunt v. Dep't of Prof'l Reg., Constr. Indus. Licensing Bd.*, 444 So. 2d 997, 999 (Fla. Dist. Ct. App. 1983) ("As held in *Alles* a designated agent may not avoid responsibility by stating that he had

---

2 Florida law applies in this case because Plaintiff has invoked the diversity jurisdiction of this Court. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

nothing to do with the project. We conclude that the qualified contractor who procures a building permit has associated himself with the project and that he may not relieve himself of that responsibility by saying that he was one of several qualifying agents who could have supervised the construction."). The Court can discern no reason why its interpretation of the insurance policies in this case, and the terms therein, should diverge in any way from how Florida law defines and treats general contractors. *See Fabricant v. Kemper Indep. Ins. Co.*, 474 F. Supp. 2d 1328, 1330 (S.D. Fla. 2007) ("Under Florida law, an insurance policy is treated like a contract, and therefore ordinary contract principles govern the interpretation and construction of such a policy.").

Plaintiff's position is fully supported by the language of the insurance policies in this case. If work was performed by JWN or on JWN's behalf—here by a subcontractor—then the "your work" exclusion applies. Historically, insurers could be liable under commercial general liabilities policies resembling the policy in the instant case for certain types of damages caused by subcontractors, if the contract lacked specificity on this topic. *See Amerisure Mut. Ins. Co. v. Auchter Co.*, 673 F.3d 1294, 1306 (11th Cir. 2012). Nonetheless, insurers do possess the right to define their coverage as excluding damages arising out of a subcontractor's defective work by eliminating subcontractor's exceptions from the policy. *See U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 891 (Fla. 2007) ("[I]f the insurer decides that [subcontractor-based risk] is a risk that it does not want to insure, it can clearly amend the policy to exclude coverage, as can be done simply by either eliminating the subcontractor exception or adding a breach of contract exclusion."); *Trovillion Const. & Dev. Co., Inc. v. Mid-Continent Cas. Co.*, No. 6:12-CV-914, 2014 WL 201678, at *7 (M.D. Fla. Jan. 17, 2014) ("[A]n insurer is only liable for structure damage

8

caused by a subcontractor's defective work if the damage occurs during the policy period of a CGL policy that includes the "subcontractor exception" to the "your work" exclusion.). An insurer is only liable for a subcontractor's defective work when the "your work" exclusion **does not** eliminate coverage for work performed by a subcontractor. *Trovillion*, 2014 WL 201678 at *7. Courts outside of this jurisdiction are in accord. *See, e.g.*, *VRV Dev. L.P. v. Mid-Continent Cas. Co.*, 630 F.3d 451, 455 (5th Cir. 2011). Here, as in cases such as *Trovillion*, the "your work" exclusion **also** excludes work performed by a subcontractor. In conclusion, the insurance policy in this case excluded coverage for work performed not only by JWN, but also by JWN's subcontractors—Mager.

Plaintiff's position is fully supported by the facts of this case. It is undisputed that Defendant JWN entered into a contract with Defendant Flax to construct the Property. DE 93 at 6. It is undisputed that the contract identified JWN as the contractor responsible for all of the work required to construct the Property. *Id.* It is undisputed that JWN pulled the permit as the general contractor so the Property could be built. *Id.* at 7. Therefore, consistent with Florida law and the plain and unambiguous language of the insurance policies, JWN was the general contractor and agent responsible for the supervision and construction of the Property. It is undisputed that JWN entered into a contract with Mager and that Mager then built Flax's home. *Id.* Thus, Mager acted as a subcontractor for JWN. These undisputed facts[3] establish that, at least as applied to the insurance policies in this case, Mager's work on the property was performed on JWN's behalf.

The Court briefly addresses Defendants' objections. Defendants argue that Mager, not JWN, was the "true" general contractor in this case. Although Defendants' argument on this point

---

3 The Court deems these facts admitted for all of the reasons set forth above in Section III.

spans three pages,[4] **Defendants cite to no legal authority**. JWN entered into a contract with Flax to construct the Property. DE 93 at 6. Defendants have no authority for the proposition that the Court can or should disregard this. JWN was the entity that pulled the general contractor permit for the Property. *Id.* at 7. Defendants have no authority for the proposition that the Court can or should disregard this.[5] Finally, the Court notes that Defendants have taken **the opposite position** in an underlying state court case as they have in the instant case. Defendant Flax has stated:

> The contract entered into between JWN and Flax is explicit and conclusively establish that **JWN was the general contractor** for the project and it was the hiring of JWN as the general contractor that allowed Flax to proceed with the financing of the project by Seacoast Bank. **The fact that JWN ultimately engaged Mager and delegated its contractual duties/responsibility to Mager, does not change the fact that JWN is the general contractor of record.... As such, Mager's responsibilities were subordinate to JWN's responsibilities, and Mager had those responsibilities set forth above only because they were delegated to Mager by JWN to carry out on JWN's behalf….** Moreover, despite the fact that Mager may have retained and/or directed the work of a variety of subcontractors at the project, none of them were preforming work on behalf of Mager. To the contrary, all of the work performed by the subcontractors **was on behalf of JWN**…. Regardless of the extent to which JWN may have delegated its contractual obligations to Mager, the contract between JWN and Flax signifies that ultimately, JWN would be held responsible for the entirety of the construction project, because it was JWN that was the contracted general contractor…. Similarly, it becomes further readily apparent that the subcontractors hired by Mager were working on behalf of JWN, the general contractor and/or Dr. Flax.

DE 105-3 (emphasis added).

In conclusion, Plaintiff has no duty to indemnify or defend JWN. JWN has no coverage under its insurance policies as the "your work" exclusion applies to the facts in this case. Florida law supports Plaintiff's position, the facts support Plaintiff's position, and the language of the insurance policies clearly and unambiguously supports Plaintiff's position. Defendants cite no

---

4 On this point, Defendants' argument runs from the bottom of 9 to the middle of page 11 at docket entry 98.
5 The Court also credits Plaintiff's argument on pages 6 and 7 of its reply; to the extent it were to be established that JWN had no role as a general contractor in this case—Mager was—the Court is unable to discern how a claim could even be brought against JWN.

germane legal authority to the contrary. Plaintiff has no duty to indemnify or defend Defendants, summary judgment is entered in Plaintiff's favor, and Plaintiff's Motion for Summary Judgment is granted.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment [DE 92] is **GRANTED**.[6] All other pending motions are denied as moot. The Clerk of the Court shall close this case. Plaintiff shall submit a proposed final judgment in Microsoft Word format to Chambers within two (2) days of the date of rendition of this Order.

**DONE and ORDERED** in Chambers, Fort Pierce, Florida, this 8th day of February, 2018.

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to: Counsel of Record

---

6 The Court rejects Defendants' argument that Plaintiff has confessed judgment without comment, however, the Court issues no ruling on any argument or any ground not discussed in this Order.